**Rosalynd Johnson**,

    Plaintiff,

v.

**Carolyn W. Colvin**,
Acting Commissioner of Social Security,

    Defendant.

**Memorandum & Recommendation**

  Plaintiff Rosalynd Johnson instituted this action on August 13, 2015, to challenge the denial of her application for social security income. Johnson claims that Administrative Law Judge Sara L. Alston erred in her determination by (1) failing to find that Johnson's impairments did not meet or medically equal Listing 1.04; (2) failing to assign controlling weight to a treating physical therapist's Medical Source Statement; and (3) finding that Johnson has the residual functional capacity ("RFC") to perform a limited range of sedentary work. Both Johnson and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 21, 27.

  After reviewing the parties' arguments, the court has determined that ALJ Alston reached the appropriate decision. ALJ Alston appropriately concluded that the evidence does not support a finding that Johnson meets or equals the criteria for Listing 1.04, she properly evaluated the medical source statement completed by a physical therapist, and she appropriately found that Johnson has the RFC to perform a limited range of sedentary work. Therefore, the undersigned

magistrate judge recommends[1] that Johnson's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

## I. Background

On January 13, 2012, Johnson filed an application for disability insurance benefits on the basis of a disability that allegedly began on October 21, 2010. After her claims were denied at both the initial stage and upon reconsideration, Johnson appeared before ALJ Alston for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Alston determined Johnson was not entitled to benefits because she was not disabled. Tr. at 33, D.E. 29.

ALJ Alston found that Johnson had the following severe impairments: lumbar disc disease, osteoarthritis, depression, personality disorder, and hypertension. *Id.* at 25. However, ALJ Alston determined that Johnson's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 25. Based on her examination of the record, ALJ Alston concluded that Johnson had the RFC to perform sedentary work, except that Johnson: can stand and/or walk for up to two hours in an eight hour workday; can sit for six hours in an eight hour workday; can lift and/or carry up to 10 pounds; can occasionally climb ramps or stars; can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; can frequently balance; can never stoop, kneel, or crawl; and can perform simple, routine, repetitive tasks. *Id.* at 27. She then found that Johnson was unable to perform any past relevant work but that, considering her age, education, work experience and RFC, there were other jobs that existed in the national economy that she was capable of performing. *Id.* at 31–32. These included: paper inserter, order clerk, and

---

[1] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

surveillance monitor. *Id.* at 32. Thus, ALJ Alston concluded that Johnson was not disabled. *Id.* at 33.

After unsuccessfully seeking review by the Appeals Council, Johnson commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on August 13, 2015. D.E. 1.

**II.    Analysis**

    **A.    Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.    Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653 & n.1 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if

3

it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether she can perform his past work despite her impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on her age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Johnson suffers from lumbar disc disease, osteoarthritis, depression, personality disorder, and hypertension. On October 10, 2010, Johnson injured her back while lifting beer kegs at work. *See, e.g.*, Tr. at 243, D.E. 29. Approximately one year later, in October 2011, Johnson underwent lumbar spine fusion surgery. *Id.* at 245. Dr. Mark Held, a neurosurgeon at Carolina Craniospinal Neurosurgery, performed the surgery and fused together L3, L4, and L5. *Id.* Prior to the October 2011 surgery, doctors performed a MRI scan of Johnson's lumbar spine, which revealed evidence of disc space narrowing at L2-3, L3-4, and L4-5 as well as varying mild degrees of foraminal lateral recess stenosis. *Id.* at 243–44. Doctors also performed an x-ray of the lumbar spine, which revealed mild multilevel disc height loss and spondylosis (*id.* at 259–60), and a discogram, which was positive at L3-4 and L4-5 (*id.* at 242). Johnson also underwent two injections for pain prior to her surgery, but experienced no relief. *Id.* at 231.

Approximately one week after the October 2011 surgery, Johnson sought care from CarolinaEast Medical Center Emergency Department for back pain and intermittent numbness in her legs. *Id.* at 410–11. Doctors noted that there was active drainage from the incision, so they

4

redressed the wound and prescribed an antibiotic. *Id.* Johnson then visited Dr. Held five times for follow-up care or back pain. *Id.* at 236–40. Dr. Held ordered an x-ray of the lumbar spine, which showed mild degenerative changes and no malalignment. *Id.* at 253. He also ordered an x-ray of the cervical spine, which revealed degenerative disc disease at C3-4, C5-6, and C6-7 with anterior and posterior osteophytes and disc space narrowing. *Id.* at 256.

Dr. Held continued to see Johnson for back pain in 2012. In January, he noted that Johnson's neurological examination was stable and normal. *Id.* at 235. In May, he reviewed Johnson's MRI scan and found no evidence of significant root compromise or infection. *Id.* at 328. He also noted that Johnson had normal strength, sensation, and reflexes in her lower extremities and negative straight leg raising and Faber tests. *Id.*

In July 2012, Johnson reinjured her back. *Id.* at 327. She visited the Carteret General Hospital Emergency Department for pain, and doctors there prescribed narcotic pain medication. *Id.* at 297–98, 331. She followed-up with Dr. Held, who ordered a MRI scan and CT scan of the lumbar spine. *Id.* The scans showed no evidence of mal-placement or loosening around the screws, but did show some desiccation at the L2-3 level, both in the disc as well as lateral recess stenosis to some degree. *Id.* at 326. Dr. Held stated that he would be reluctant to pursue aggressive intervention because Johnson's 2011 fusion surgery did not provide her with much relief. *Id.* Later that year, Dr. Held noted that Johnson had a positive discogram at L2-3 and that her MRI showed degenerative changes consistent with the discogram. *Id.* at 340. He ordered another MRI of the lumbar spine, which revealed a stable minimal grade 1 anterolisthesis of L4 over L5, a minimal grade 1 retrolisthesis of L3 over L4, and mild anterior osteophyte formation in the lower thoracic spine and at the L2-3 level. *Id.* at 338. At the follow-up visit, Johnson had normal lower extremity strength, unchanged reflexes and sensations, a negative straight leg

5

raising test, and a positive discogram at L2-3. *Id.* at 336. Dr. Held opined that further extension of Johnson's fusion would not provide adequate relief and that pain management was Johnson's best option. *Id.*

Johnson sought pain relief from Dr. Zachary Kitchen at Crystal Coast Pain Management. *See, e.g.*, *id.* at 261–65. Dr. Kitchen prescribed narcotic pain medication (*id.* at 261–65, 311–18) and performed a sacroiliac injection (*id.* at 311). However, Johnson and Dr. Kitchen could not agree on a pain management plan. *Id.* at 315–18. So, Dr. Kitchen transferred care to Dr. Marcono Hines of Nova Pain Management (*id.* at 315–18), who was also treating Johnson for pain (*id* at 332–35). Dr. Hines prescribed narcotic pain medicine along with a muscle relaxant. *Id.* at 382–84. Dr. Hines continued to prescribe narcotic pain medicine to manage Johnson's pain in 2013. *Id.* at 375–82.

In 2013, Johnson twice sought care from Dr. Held for lumbar spine pain. In a treatment note from her March 2013 visit, Dr. Held stated that he had little to offer from a neurosurgical standpoint because Johnson's CT and MRI scans across the levels of prior surgery looked fine. *Id.* at 361. At her October 2013 visit, Dr. Held noted that a recent CT scan showed good positioning of the screws, no loosening of the screws, and good lateral fusion. *Id.* at 389. The CT scan also showed a degree of stenosis at L2-3 and some degeneration at the L2-3 level. *Id.* Dr. Held opined that Johnson's widespread lumbar pain likely would not improve with surgical intervention and recommended holding off on any further work-up or neurosurgical intervention. *Id.*

### D. Listing Impairment 1.04

Johnson first contends that ALJ Alston erred by finding that her impairments did not meet or medically equaled Listing 1.04. The Commissioner maintains that the evidentiary record

6

supports the ALJ's finding. The court concludes that ALJ Alston properly found that Johnson's impairments did not satisfy the requisite criteria of the Listing.

### 1. Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C.

Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.*

### 2. Listing 1.04

ALJ Alston found that Johnson's impairments did not meet or medically equal a listing in Section 1.00 Musculoskeletal System. Tr. at 25, D.E. 29. Johnson contends that ALJ Alston erred by not finding that her impairments met or medically equaled Listing 1.04 (disorders of the spine). Under this Listing, a claimant first must show a disorder of the spine, such as a "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and/or] vertebral fracture … resulting in compromise of a nerve root (including

8

the cauda equina) or the spinal cord." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04. The claimant must then satisfy any one of three categories of certain distinguishing characteristics labeled A through C:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id*. An "inability to ambulate effectively" requires "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00B(2)(b).

ALJ Alston did not discuss her reasons for finding that Johnson did not meet or medically equal listings contained in Section 1.00 Musculoskeletal System. Tr. at 21, D.E. 29. However, ALJ Alston thoroughly analyzed Johnson's medical record (*id.* at 23–26) and, as will be explained, there is substantial evidence to support her conclusion that Johnson did not meet or medically equal Listing 1.04. *See Meador v. Colvin*, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) ("A cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion."). The medical evidence contained in the

9

record shows that Johnson consistently had normal sensory exams and negative straight-leg raising tests. *Id.* at 252, 266, 268, 275, 313, 318, 321. Additionally, there is no operative note, pathology report, or medical imaging confirming spinal arachnoiditis. While there are anecdotal reports of Johnson using an assistive device to ambulate (*see, e.g.*, *id.* at 276), there is no evidence that Johnson *requires* "the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." 20 C.F.R. Part 404, Subpart P, Appx. 1 § 1.00B(2)(b) (emphasis added). Indeed, Dr. Morris, a consultative examiner whose opinion ALJ Alston gave significant weight (Tr. at 26, D.E. 29), opined that an assistive device was not medically necessary for ambulation, but that a cane would help for long distances and uneven terrain (Tr. at 428–29, D.E. 30). Even if Dr. Morris found that a cane was medically necessary for Johnson to ambulate, this finding still would not be sufficient to meet Listing 1.04(C). *See McAuley v. Colvin*, No. 7:12-CV-311-D, 2013 WL 7098724, at *9 n.15 (E.D.N.C. Dec. 13, 2013) (noting that the claimant's use of a single cane to ambulate "does not bring him within the ambit of 1.04(C)").

Furthermore, Johnson fails to meet her burden of demonstrating that her impairments meet or medically equal a listed impairment. In support of her argument, Johnson points to the following evidence from 2011: a MRI showing disc space narrowing at L2-3, L3-4, L4-5 and varying mild degrees of foraminal lateral recess stenosis (Tr. at 243, D.E. 29), a discogram that was positive at L3-4 and L4-5 (*id.* at 242), and a x-ray showing degenerative disc disease at C3-4, C5-6, and C6-7 with anterior and posterior osteophytes and disc space narrowing (*id.* at 256). Johnson also points to two MRIs from 2012, showing degenerative changes at L2-3 (*id.* at 340) and a stable minimal grade 1 anterolistheis of L4 over L5 and a minimal grade 1 retrolisthesis of L3 over L4 with mild anterior osteophyte formation in the lower thoracic spine and at the L2-3

10

level (*id.* at 338). However, the aforementioned evidence is not evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication and the inability to ambulate effectively—the distinguishing characteristics required by Listing 1.04. Accordingly, ALJ Alston did not err in finding that Johnson did not meet or medically equal Listing 1.04.

E. **Physical Therapist's Medical Source Statement**

Johnson next argues that ALJ Alston erred by not assigning controlling weight to a medical source statement completed by her treating physical therapist, Maegan Barry. Colvin contends that ALJ Alston properly evaluated the opinion. The court agrees with Colvin.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however,

"the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1994) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

Johnson argues that ALJ Alston erred by failing to assign the medical source statement completed by Maegan Barry, her treating physical therapist, controlling weight. Only the opinions of treating sources from the claimant's physician, psychologist, or other acceptable medical source may be entitled to controlling weight. *See Turner v. Astrue*, No. 3:12CV422-MOC-DSC, 2013 WL 1182681, at *3 (W.D.N.C. Feb. 12, 2013), *adopted by sub nom. Turner v. Colvin*, No. 3:12-CV-00422-MOC, 2013 WL 1181603 (W.D.N.C. Mar. 21, 2013); SSR 06-03P, 2006 WL 2329939, at *2; 20 C.F.R. §§ 404.1502, 404.1513(a), (c). A physical therapist is not an acceptable medical source under the regulations. *See* 20 C.F.R. § 404.1513(a) (listing acceptable sources who can provide evidence to establish an impairment as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); *id.* § 404.1513(d) (stating that other sources, such as therapists, may provide evidence to show impairment severity and how the impairment affects the claimant's ability to

work). Thus, a physical therapist's opinion is not entitled to controlling weight. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 878 (3d Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), *on reh'g*, 368 F.3d 691 (7th Cir. 2004); *Carter v. Colvin*, No. 1:13CV334, 2016 WL 1735885, at *11 (M.D.N.C. May 2, 2016); *Turner*, 2013 WL 1182681, at *3. However, the ALJ must still evaluate the opinion and explain the weight given to it. *See* 20 C.F.R. § 404.1527(c).

Here, ALJ Alston explained that she assigned partial weight to Maegan Barry's medical source statement because "the portion of her opinion regarding the claimant's manipulative restrictions is not explained or supported by any clinical findings." Tr. at 30, D.E. 29. This conclusion is supported by substantial evidence as there is no evidence in the record indicating that Johnson has difficulty with manipulative movements. Furthermore, a consultative examiner, Dr. Morris, opined that Johnson did not need manipulative limitations (Tr. at 428, D.E. 30) and ALJ Alston gave that opinion significant weight (Tr. at 26, D.E. 29). Accordingly, Johnson fails to show that ALJ Alston erred in evaluating Barry's medical source statement and her argument on this issue lacks merit.

### F. Residual Functional Capacity Determination

Johnson's final argument is that ALJ Alston erred in determining that she is capable of performing a limited range of sedentary work. Colvin argues that substantial evidence supports ALJ Alston's conclusion. After review, the court finds that ALJ Alston's conclusion that Johnson is capable of performing a limited range of sedentary work is supported by substantial evidence.

If the claimant's impairment does not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, App. 1, then the ALJ must calculate the claimant's RFC to determine

13

Case 4:15-cv-00133-FL   Document 31   Filed 07/22/16   Page 13 of 17

whether she can perform her past work despite her impairments. The claimant's RFC is comprised of her impairments and any related symptoms that affect her abilities in a work setting. 20 C.F.R. § 404.1545(a)(1). When assessing the RFC, the ALJ considers physical abilities; mental abilities; other abilities affected by impairments, such as "impairment(s) which impose environmental restrictions;" and the total limiting effects of the impairments and any related symptoms. *Id.* § 404.1545(b)–(d). The ALJ considers all impairments, even those that are not severe, "and reviews 'all of the relevant medical and other evidence.'" *Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)).

The ALJ has a duty of explanation that is satisfied by providing "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt v. Bowen*, 887 F.2d 1082 (Table), 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam) (unpublished). Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [his] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Johnson argues that she is not able to perform work at any exertional level. In support of her argument, she points to various parts of the record, including her testimony given at her hearing and a medical source statement completed by her physical therapist Maegan Berry. At her hearing, Johnson testified that she is able to sit for 10 to 15 minutes and stand for 30 minutes (Tr. at 56–57, D.E. 29), that she can lift up to seven pounds (*id.* at 58), and that she is unable to do chores around her home due to her pain (*id.* at 46). She contends that this testimony is credible because it is supported by the record.

However, ALJ Alston found that Johnson's testimony was not wholly credible. *Id.* at 24. ALJ Alston explained that Johnson's imaging and test results continuously revealed unremarkable and stable findings and that two consultative examiners opined that Johnson had mild or moderate limitations with standing and moderate limitations with walking, lifting, carrying, bending, and stooping. *Id.* at 24–25. Additionally, as already explained, ALJ Alston properly gave Berry's medical source statement partial weight. *See supra* Part II.E. ALJ Alston was therefore not required to incorporate the limitations explained by Johnson or the limitations noted in Berry's medical source statement into the RFC.

Moreover, ALJ Alston's determination that Johnson is capable of performing a limited range of sedentary work is supported by substantial evidence. When reviewing for substantial evidences, courts "do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [their] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (second alteration in original) (internal quotation marks omitted). Here, the State agency medical consultants concluded that Johnson could perform light or medium work. Tr. at 91–92, D.E. 29 (medium work); *id.* at 109 (light work). However, Dr. Morris, a consultative examiner, determined that Johnson could perform a limited range of sedentary work. Tr. at 430–31, D.E. 30 (stating that, in an eight-hour workday, Johnson can sit for up to six hours, stand for up to four hours, and walk for up to two hours, and that Johnson can occasionally lift and carry up to 10 pounds); *id.* at 432–33 (opining that Johnson should be limited to occasional reaching, pushing and pulling, climbing stairs or ramps, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders or scaffolds). Jennifer Hardison, a physical therapist, also concluded that Johnson was capable of sedentary work. Tr. at 349, D.E. 29. ALJ Alston gave the opinions of the State agency medical consultants

15

and Hardison good weight and gave Dr. Morris's opinion significant weight. *Id.* at 26–27. These medical opinions suggest that Johnson's impairments were not as limiting as she alleged and support ALJ Alston's finding that Johnson is capable of a reduced range of sedentary work. Additionally, as noted in ALJ Alston's decision, treatment records at times reflect only mild findings, exaggeration of pain behavior, and negative straight leg raising tests. *Id.* at 24–25. Accordingly, substantial evidence supports ALJ Alston's RFC determination and Johnson's argument is without merit.

### III. Conclusion

For the forgoing reasons, the court recommends that Johnson's Motion for Judgment on the Pleadings (D.E. 21) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 27) be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review**

**of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: July 22, 2016

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE