IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-133-FL

| | |
|---|---|
| ROSALYND JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ORDER ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 21, 27). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation in the M&R in part, rejects it in part, and remands to the defendant for further proceedings.

**BACKGROUND**

On January 13, 2012, plaintiff filed an application for disability benefits, alleging disability beginning October 21, 2010. The application was denied both initially and upon reconsideration. Thereafter, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), who, after a November 18, 2013, hearing, denied plaintiff's claims by order entered May 23, 2014. Following the ALJ's denial of her applications, plaintiff timely filed a request for review with the Appeals Council. On July 15, 2015, the Appeals Council denied plaintiff's request for review,

leaving the ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court seeking review of defendant's decision.

**COURT'S DISCUSSION**

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 21, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: lumbar disc disease, osteoarthritis, depression, personality disorder, and hypertension. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments ("listings" or "listed impairments") in the regulations. See 20 C.F.R. § 404, Subpt. P, App.1 [hereinafter "Listing of Impairments"].

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: sit for six hours out of an eight-hour workday; stand and/or walk for two hours out of an eight-hour workday; lift and/or carry 10 pounds; occasionally climb ramps, stairs, ladders, opes, or scaffolds; frequently balance; never stoop, kneel, or crawl; and perform simple, routine and repetitive tasks. In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. At step four, the ALJ concluded plaintiff was unable to perform her past relevant work as a cashier, landscape laborer, kitchen helper, HVAC helper, or assistant manager. At step five, the ALJ determined that jobs exist in significant numbers that plaintiff was capable of performing. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

4

B.  Analysis

   1.  Listed Impairments

Plaintiff argues that the ALJ should have found her disabled at step three, on the basis of listing 1.04, which covers "disorders of the spine . . . or the spinal cord." Listing of Impairments, § 1.04.

The Listing of Impairments "describes for each of the major body systems impairments that [defendant] consider[s] to be severe enough to prevent an individual from doing any gainful activity," irrespective of vocational factors such as "age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The listed impairments "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Id. at 530. A social security claimant bears the burden of demonstrating that his "medically determinable" impairments, those impairments expected to either result in death or "last for a continuous period of at least 12 months," 20 C.F.R. §§ 404.1525(c)(5), (d); 416.925(c)(5), (d), meet or, either individually or in combination, medically equal one of the listed impairments. Id. §§ 404.1525(c)(4)–(5), 416.925(c)(4)–(5); Pass, 65 F.3d at 1203 (holding that social security claimants bear the burden of proof at step three).

A social security claimant's impairments medically equal a listed impairment where they are "at least equal in severity and duration to the criteria of any listed impairment." Id. §§ 404.1526(a), 416.926(a). In other words, a social security claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531; accord 20 C.F.R. §§ 404.1526(a), 416.926(a). However, the social security claimant's evidence

5

must be targeted to the most analogous listed impairment's criteria, not the social security claimant's overall functional limitations. See Social Security Ruling ("S.S.R.") 83-19, 1983 WL 31248, at *91–92; see also S.S.R 96-6p, 1993 WL 374180, at *1–2 (reinstating S.S.R. 83-19); Zebley, 493 U.S. at 531.

Plaintiff argues that the ALJ should have found her disabled at step three, due to her impairments meeting or equaling listing 1.04, on the basis that plaintiff suffers from degenerative disc disease, chronic back pain, lumbar spondylosis, and lumbar radiculopathy. (Pl.'s Objections, DE 32, at 3).

Under listing 1.04, a claimant is "disabled" upon satisfying two criteria. First, a claimant must show a disorder of the spine resulting in compromise of a nerve root or the spinal cord. Listing of Impairments, § 1.04. Second, the claimant must show that her disorder of the spine is accompanied by at least one of three specified distinguishing characteristics: nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Id. The regulations require a claimant to prove each of the three distinguishing characteristics by specific forms of evidence. Id. Nerve root compression involving the lower back must be proved by a positive straight-leg raising test (sitting and supine). Id. Spinal arachnoiditis must be confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging. Id. Lumbar spinal stenosis must be established by findings on appropriate medically acceptable imaging and must result in inability to ambulate effectively. Id. An "inability to ambulate effectively" requires "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. § 1.00B(1).

Here, the ALJ found that plaintiff's impairments do not meet the requirements of listing 1.04 and that "no acceptable medical source has cited findings equivalent in severity to the criteria of any listed impairment." (Tr. 21–22). Although, the ALJ gave great weight to evidence suggesting that plaintiff suffers from degenerative disc disease, (Tr. 27), the medical evidence discloses that plaintiff's impairments do not exhibit any of the required distinguishing characteristics. Particularly, plaintiff had normal sensory exams and negative straight-leg raising tests. (Tr. at 252, 266, 268, 275, 313, 318, 321). Additionally, there is no operative note, pathology report, or medical imaging confirming spinal arachnoiditis. While there are reports of plaintiff using assistive devices to ambulate (see, e.g., id. at 276), there is evidence that plaintiff does not require these devices to ambulate effectively. See Listing of Impairments, § 1.04. For example, Dr. Morris, a consultative examiner, found that "[a]n assistive device is not medically necessary for ambulation, as [plainitff] was able to ambulate without her cane on physical examination." (Tr. 428). Finally, none of plaintiff's remaining evidence—an MRI showing disc space narrowing, (Tr. 243), a positive discogram, (Tr. 242), an x-ray showing degenerative disc disease, (Tr. 256), and two later MRIs showing degenerative changes (Tr. 340)—constitutes evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication and inability to ambulate effectively as required by listing 1.04.

Because the M&R's analysis on this point is thorough and correct, the court incorporates herein and adopts as its own the M&R's conclusion that the ALJ considered the evidence cited by plaintiff, weighed it against substantial countervailing evidence, and determined that plaintiff did not satisfy the requirements of listing 1.04.

### 2. Physical Therapist Opinion

Plaintiff argues that the ALJ erred by giving less than controlling weight to the opinion of her physical therapist, Dr. Meagan Barry. (Pl.'s Objections, DE 32, at 6) In support of this argument, plaintiff contends that Dr. Barry's opinion is entitled to the same controlling weight that the court would give to an undisputed opinion of a treating physician, (Pl.'s Objections, DE 32, at 6), or, in the alternative, that the ALJ's decision to give partial weight to Dr. Barry's opinion was not supported by substantial evidence, (Pl.'s Objections, DE 32, at 7). The magistrate judge rejected plaintiff's arguments, finding that the ALJ's decision to give partial weight to Dr. Barry's opinion was supported by substantial evidence. (M&R, DE 31, at 11).

An ALJ must weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c)). Generally, opinions from treating sources are given greater weight than opinions from non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). A "treating source" is the claimant's "physician, psychologist, or other acceptable medical source" who provides medical treatment to the claimant on an ongoing basis. 20 C.F.R. § 404.1502. Under the regulations, the opinion of a treating source regarding the nature and severity of a claimant's impairment is entitled to controlling weight if it is well supported by medical evidence and is not inconsistent with other substantial evidence contained in the claimant's case record. 20 C.F.R. § 1527(c)(2). However, any medical opinion, even one from a treating source, should be given less weight if it is not well supported or if it is inconsistent with other evidence in the record. Id. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); Craig, 76 F.3d at 590.

While an ALJ is under no obligation to accept any medical opinion, he or she must nevertheless explain the weight afforded such opinions. See S.S.R. 96-2p, 1996 WL 374188, at *5

8

(July 2, 1996); see also Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)). If such an explanation is provided, then the court "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." Dunn v. Colvin, 607 F. App'x 264, 271 (4th Cir. 2015).

Here, plaintiff argues that the ALJ should have given controlling weight to Dr. Barry's opinion. (Pl.'s Objections, DE 32, at 6). This argument fails for two reasons. First, a physical therapist is not an "acceptable medical source" as defined in the regulations, 20 C.F.R. § 404.1513(a), and, therefore, cannot qualify as a "treating source," see id. § 1502 (defining "treating source"). Consequently, evidence submitted by a physical therapist is never entitled to the same controlling weight that an ALJ should give the undisputed opinion of a "treating source."

Second, the ALJ's decision to grant partial weight to Dr. Barry's opinion was supported by substantial evidence. In particular, the ALJ found that Dr. Barry's "opinion regarding the claimant's manipulative restriction is not explained or supported by any clinical findings." (Tr. at 26). Further, Dr. Barry's opinion regarding plaintiff's manipulative limitations is contradicted by the opinion of Dr. Morris, which concludes that "no manipulative limitations are expected in regards to handling, feeling, or grasping." (Tr. 428). Thus, because Dr. Barry is not a physician and her opinion is not entirely consistent with the record as a whole, the ALJ's decision to grant partial weight to Dr. Barry's opinion is supported by substantial evidence.

9

3. Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining that she was able to perform sedentary work. (Pl.'s Objections, DE 32, at 8). In support of her argument, plaintiff relies primarily on her own testimony regarding chronic pain and a section of Dr. Morris's report discussing plaintiff's impairments that the ALJ did not expressly discuss. (Pl.'s Objections, DE 32, at 8–9).

Social Security Ruling 96-8P, which explains how the ALJ should assess a social security claimant's RFC, calls for a "function-by-function" assessment of a social security claimant's limitations. S.S.R. 96-8P, 1996 WL 374184, at *1. Once the required "function-by-function" assessment is complete, the ALJ must express a social security claimant's RFC in terms of exertional levels of work. See id. The "function-by-function" assessment must include a threshold level of analysis in order to allow this court to "review meaningfully" the ALJ's conclusions. Mascio, 780 F.3d at 636–37.

In a recent series of decisions, the Fourth Circuit Court of Appeals has clarified the level of analysis a reviewing court requires from an ALJ. "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. Rather, it is the ALJ's duty to perform a "function-by-function" analysis and "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189.

a. Pain Allegations

The court address plaintiff's argument that her testimony demonstrates an inability to work due to chronic pain. In assessing credibility of plaintiff's pain allegations, the ALJ must follow a

two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and (2) the ALJ must evaluate the credibility of the statements regarding those symptoms. Craig v. Chater, 76 F.3d 585, 594-96 (4th Cir. 1996). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . . laboratory findings," "daily activities," and "medical treatment." Id. at 595 (internal quotations omitted). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

At step one, the ALJ found that plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, including pain. (Tr. 24). At step two, the ALJ found that plaintiff's testimony regarding the intensity of her pain was not entirely credible. (Tr. 24). To support this finding, the ALJ discussed several medical sources indicating that plaintiff's pain was not as severe as she claimed. In particular, the ALJ noted that pain management records from April 2012 suggested exaggerated pain behavior, (Tr. 25), physical therapy records from February 2013 noted self-limiting behavior on tests designed to measure pain, (Tr. 25), and plaintiff reported that her pain medications were, at least, partially effective in managing pain, (Tr. 25).

In light of Mascio and Monroe, the ALJ did not explain sufficiently how she interpreted the available medical evidence to draw the foregoing conclusions. For example, the ALJ's reference to plaintiff's "exaggerated pain behavior" apparently rests on a report by Dr. Kitchen stating, "PSYCHIATRIC: angry affect and pain behavior exaggerated." (Tr. 317). However, the ALJ did

11

not mention Dr. Kitchen's report when assigning weight to the various sources of opinion evidence. (See Tr. 26–27 (discussing weights grated to opinion evidence)). Further, Dr. Kitchen's report mentions the presence of "Waddell's signs," (Tr. 317), which may indicate either that a patient has nonorganic pain or is exaggerating symptoms.[1] However, there is no discussion in either Dr. Kitchen's report or in the ALJ's opinion whether plaintiff's Waddell's signs are indicative of exaggerated symptoms rather than genuine nonorganic pain.

Second, the ALJ noted that, during certain physical examinations, plaintiff engaged in "self-limiting behavior." (Tr. 25). This observation is grounded in a report by Jennifer Hardison, a physical therapist, whose opinion the ALJ gave "good weight." (Tr. 27). Ms. Hardison finds that plaintiff engaged in "self-limiting behavior" during a statistically significant portion of examinations. (Tr. 349, 362). However, in the section that defines "self-limiting behavior," Ms. Hardison's report states that "[p]ossible causes of self-limiting behavior include: (1) pain; (2) psychosocial issues such as fear of reinjury, anxiety, or depression; and/or (3) attempts to manipulate test results." (Tr. 349, 362).

From this observation, two issues emerge. First, the ALJ did not adequately explain why she interpreted the presence of self-limiting behavior as evidence of plaintiff's attempt to manipulate test results (under the third definition) rather than as evidence of plaintiff's pain or psychosocial issues (under the first or second definitions, respectively). Second, Ms. Hardison indicated expressly in her report that pain was, in fact, the reason plaintiff engaged self-limiting behavior on six out of the seven tests that indicated self-limiting behavior. (Tr. 366). From the ALJ's opinion,

---

[1] See Wall v. Astrue 561 F.3d 1048, 1056 n.10 (10 Cir. 2009) (discussing Waddell's signs), Beck v. Colvin, 7:15-CV-80-D, 2016 WL 3211471, at * 12 (E.D.N.C. May 5, 2016) (same), Reinertson v. Barnhart, 127 Fed. Appx. 285, 289 (9th Cir. 2005) (same).

12

it is unclear whether this part of Ms. Hardison's report was given "good weight" alongside the rest of the report. If it was given "good weight," the ALJ did not adequately explain why any other evidence of plaintiff's malingering was found determinative. If it was given less weight than the rest of the report, the ALJ did not adequately explain why.

Finally, the ALJ discussed that medications at least partially mitigated plaintiff's pain. (Tr. 25). However, plaintiff claims also that her pain medications cause drowsiness. (Pl.'s Objections, DE 32, 9). The ALJ did not did not discuss plaintiff's drowsiness nor address whether jobs are available in the national economy for someone who experiences plaintiff's level of drowsiness. Consequently, the ALJ explanation of the significance, if any, of plaintiff's drowsiness was insufficient.

### b. Plaintiff's Sit-Stand Limitation

Plaintiff argues, for the first time in her objections, that the ALJ failed to account for certain limitations noted in Dr. Morris's report, whose opinion the ALJ gave "significant weight."[2] (Tr. 26) Specifically, although the ALJ discussed Dr. Morris's report generally, she did not address the part of Dr. Morris's report indicating that plaintiff can walk, stand, and sit each in only 30 minute increments. Additionally, the ALJ did not address plaintiff's own testimony that she can sit for only 10-15 minutes at a time.

A limitation that prevents a claimant from either sitting or standing for long periods, but permits a claimant to sit or stand, in total, long enough to endure an eight-hour work day, is known as a "sit-stand" limitation. Golini v. Astrue 483 Fed. Appx. 806, 807 (4th Cir. 2012), see also SSR

---

[2] In her objections, plaintiff states that the ALJ gave "great weight" to Dr. Morris's opinion. (Pl.'s Objections at 9). In fact, the ALJ described the weight given to Dr. Morris's opinion as "significant." (Tr. 26). The ALJ gave "great weight" to only Dr. Held's opinion dated October 17, 2013. (Tr. 27).

13

83-12, 1983 WL 31253, at *4 (discussing alternate sitting and standing). The presence of a sit-stand limitation does not necessarily imply that a claimant is disabled. See Golini 483 Fed. Appx. at 808 (denying disability benefits despite claimant's sit-stand limitation). However, when a claimant exhibits a sit-stand limitation, it is incumbent upon the ALJ, as in all disability determinations, to determine whether jobs are available in the national economy that someone with the claimant's impairments can perform. 20 C.F.R. § 404.1512(g).

Here, there is conflicting evidence regarding plaintiff's alleged sit-stand limitation. While Dr. Caswell found that plaintiff "can be expected to sit normally in an 8-hour workday with normal breaks," (Tr. 273), Dr. Morris's report and plaintiff's testimony indicate that plaintiff can sit, stand, and walk each in only 30 minute increments at most. (Tr. 431). The ALJ did not discuss this portion of Dr. Morris report, explain the level of weight given to Dr. Caswell's opinion, nor receive testimony from a vocational expert to determine whether jobs are available in the national economy that someone could perform in light of plaintiff's alleged sit-stand limitation.

Because the ALJ did not explain certain ambiguities in the medical evidence nor the weight given to material parts of that evidence, the ALJ's decision that plaintiff is capable of performing sedentary work is not adequately explained under the standards set forth in Monroe.

**CONCLUSION**

Based on the foregoing, the court ACCEPTS the recommendation in the M&R in part, REJECTS it in part, GRANTS plaintiff's motion (DE 21), DENIES defendant's motion (DE 27), and REMANDS to the defendant for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. 405(g).

SO ORDERED, this the 23rd day of September, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge